UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| Timothy Akers, individually and on behalf of all others similarly situated, | 3:21-cv-01098 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Costco Wholesale Corporation, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Costco Wholesale Corporation ("defendant") manufactures, packages, labels, markets, and sells carbonated (sparkling) flavored water purporting to have a black raspberry taste under the Kirkland Signature brand ("Product").

2.    In the last five years, sparkling water sales have increased over 40 percent, with Americans consuming 170 million gallons each year.[1]

3.    Defendant markets the Product to the many consumers who have cut back on sugary carbonated soft drinks (CSD) and fruit juices, due to growing awareness of sugar's adverse health effects.[2]

4.    "Flavored water is more interesting than plain water but also allows consumers to avoid the added sugars and calories present in other carbonates and juices."

---

[1] Sheila Marikar, The Seltzer Bubble, New York Times, July 13, 2019.
[2] Rebekah Schouten, Why is sparkling water so big right now?, Food Business News, Mar. 10, 2021; Margaret Malochleb, Riding the Wave of Flavored Waters, IFT.org, Sept. 1, 2019; Barbara Harfmann, Bottled Water Bubbles Over with Growth, Beverage Industry, Oct. 8, 2019.

5.      Sparkling waters with real berry fruit ingredients are available to consumers from companies like Spindrift (left), which compete with defendant's Product (right).[3]

 

6.      At least seven out of ten consumers avoid artificial flavors because they believe the synthetic ingredients are associated with detrimental health effects. [4]

7.      Consumers prefer foods and beverages which get their taste from food ingredients instead of added flavor, because this is perceived as more natural, less processed, and not made with additives or solvents that are used, even in making "natural flavors."

8.      Federal and identical state regulations prohibit false and deceptive practices with respect to labeling food and beverages. Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal [food labeling] regulation automatically adopted…takes effect in this State on the date it becomes effective as a Federal regulation.").

---

[3] The Spindrift product is blackberry and not black raspberry and is shown for illustrative purposes.
[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

9.     The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

10.     Defendant's labeling – "Kirkland Signature," "Sparkling Black Raspberry Flavor," "Carbonated Flavored Water," and two ripe black raspberries – misleads consumers as to the relative amount, quantity, and type of flavoring ingredients.



11.     Federal and state regulations require the Product to disclose the source of its characterizing black raspberry flavor, i.e., from real black raspberry ingredients, extracted from black raspberries, from natural sources other than black raspberries, i.e., blueberries, or artificial sources, such as petroleum products. 21 C.F.R. § 101.22; 21 C.F.R. § 102.5(a).

12.     Consumers are accustomed to the front label of products disclosing the flavor source, i.e., "naturally flavored," "artificially flavored," etc.

13.     By identifying the Product as having a "Black Raspberry Flavor," with pictures of black raspberries, consumers will expect its flavor is from black raspberries and that the absence of a statement such as "Artificially Flavored" is equivalent to the Product's characterizing flavor not being supplied from artificial flavors.

14.     Natural flavor is defined as:

> essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.

> 21 C.F.R § 101.22(a)(3).

15.     Artificial flavor is defined as:

> any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

> 21 C.F.R § 101.22(a)(1).

16.     The Product's ingredients include:

**INGREDIENTS:** Carbonated Water, Contains  < 2% of Green Tea, Vitamin D3, Niacin, Calcium Panthothentate, Pyridoxine Hydrochloride, Biotin, Vitamin B12, Natural Flavors, Malic Acid, Sucralose, Red 40, Blue 1, Potassium Benzoate (Preservative).

## I.    PRODUCT CONTAINS UNDISCLOSED ARTIFICIAL FLAVOR

17.    Taste is the combination of sensations arising from specialized receptor cells located in the mouth.

18.    Sweetness and tartness are important contributors to the flavor perception of black raspberries, known for their crisp tartness.

19.    The Product's ingredients show that part of its flavor comes from "Natural Flavors."

20.    However, the Product's flavor also comes from "Malic Acid," listed after "Natural Flavors" on the ingredient list.

21.    Malic Acid is a key organic acid that provides a tart and fruity taste.

22.    Malic Acid (molecular formula C4H6O5) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid.

23.    Malic Acid has two isomers, or different arrangements of atoms in the molecule, L-Malic Acid, and D-Malic Acid. 21 C.F.R. § 184.1069.

24.    L-Malic Acid occurs naturally in various fruits.

25.    D-Malic Acid does not occur naturally.

26.    D-Malic Acid is most commonly found as a racemic mixture, DL-Malic Acid, which is commercially made from petroleum products.

27.    Based on laboratory analysis, the Product includes the "DL" version of malic acid to improve its tart and fruity taste.

28.    The Product could have used natural, L-Malic Acid, or a natural version of citric acid.

29.    However, defendant used artificial DL-Malic Acid because it was likely cheaper or more accurately resembled natural flavors.

30.    DL-Malic Acid is not a "natural flavor" as this term is defined by federal and state regulations.

31.    DL-Malic Acid is derived from petroleum products and is an artificial flavor.

32.    DL-Malic Acid could function as a flavor enhancer or PH balancer if the flavor imparted by malic acid is not a core component of the natural flavor of the food.

33.    A flavor enhancer is "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

34.    PH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

35.    Regardless of why DL-Malic Acid was added to the Product, it enhances and simulates the black raspberry taste.

36.    The Product's front label is misleading because it omits the terms, "Artificially Flavored."

37.    Consumers are misled to expect the taste comes exclusively and/or predominantly from black raspberries and/or natural sources other than black raspberries.

38.    Consumers are unable to learn the malic acid listed in the ingredients is the artificial version without a chemistry kit.

## II.    PRODUCT LACKS APPRECIABLE AMOUNT OF BLACK RASPBERRY INGREDIENTS

39.    Despite the prominent pictures of black raspberries, the dark red coloring of the liquid and promises of "Black Raspberry Flavor," the Product lacks an appreciable amount of black raspberry ingredients.

40.     According to flavor expert Bob Holmes, if the product provided "all the flavor depth" of the named black raspberry ingredient, the ingredient list would include black raspberry extract or black raspberry juice, instead of "NATURAL FLAVORS" (and Malic Acid).

41.     The Product's "Natural Flavors" may contain some flavor compounds from black raspberry, but also from fruits other than black raspberries.

42.     These compounds are cheaper than using only black raspberries, and more concentrated, so less black raspberry needs to be used.

43.     This was or would be confirmed by lab testing to show absence of the spectrum of flavor compounds associated with black raspberries.

44.     Black raspberry gets its flavor from alcohols, aldehydes, esters, ethers, terpenes, hydrocarbons, and/or ketones.

45.     These compounds give black raspberry their characteristic tart taste, complemented by sweetness.

46.     Consumers also value black raspberries for their nutritive purposes. *See* 21 C.F.R. § 101.22(a)(3).

47.     Black raspberries contain antioxidants to protect cells from damaging free radicals.

48.     The Product lacks an authentic black raspberry taste because though it may contain some black raspberry compounds, it lacks a sufficient amount of the complementary flavor compounds.

49.     The front label attempts to disclaim the presence of blackberry ingredients through the statements, "Zero Calories" and "Carbonated Flavored Water."



50.     However, the lack of calories is inconsistent with the Product's reddish color, the same color that black raspberries would provide, which confused plaintiff and consumers.

51.     To give consumers the false impression that the Product contains a greater absolute and relative amount of black raspberry ingredients than it does, it contains red 40 and blue 1, synthetic food colorings made from petroleum.

52.     According to the head of a prominent flavor and color manufacturer, "Color is the first thing a consumer may consider when purchasing a food or beverage item."

53.     According to one website, "Artificial dyes are also used to help hide the fact that many processed foods don't contain much (or any) of the nutrients or foods they claim to have."

54.     Without the added coloring, consumers would be suspect of a product labeled as "Black Raspberry Flavor," because the color would not be dark red.

55.     This could cause consumers to inspect the ingredient list to determine the truth.

56.     The Product does not reveal the addition of this artificial coloring anywhere other than the ingredient list.

57.     Though Red 40 and Blue 1 have been approved by the FDA for use in food products and must be listed as an ingredient on labels, they have been banned throughout Australia and Europe due to health concerns and are linked to learning disorders and hyperactivity in children.

58.    Given that the Product is sold under the Kirkland Signature brand, Plaintiff had no reason to expect the Product lacked the relative amount and type of named fruit ingredients.

III.    CONCLUSION

59.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

60.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

61.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

62.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

63.    The Product is sold for a price premium compared to other similar products, no less than $36.99, for the Kirkland Signature Flavored Sparkling Water Variety Club Pack of 24 bottles ($1.50 per 17 oz. bottle), of which eight are the black raspberry variety, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

64.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

65.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

66.    Plaintiff Timothy Akers is a citizen of Illinois.

67.    Defendant Costco Wholesale Corporation is a Washington corporation with a

principal place of business in Issaquah, King County, Washington

68.    The parties are citizens of different states.

69.    Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

Parties

70.    Plaintiff Timothy Akers is a citizen of Lawrenceville, Lawrence County, Illinois.

71.    Defendant Costco Wholesale Corporation, is a Washington corporation with a principal place of business in Issaquah, Washington, King County.

72.    Defendant operates close to six hundred warehouse stores in the United States.

73.    Defendant's business model is based on an annual membership fee of $60.

74.    By using the membership fee as a source of revenue, Defendant sells higher quality goods at lower prices than competitors, because it does not need to maximize profit on every item.

75.    The Product is available at Defendant's stores within this state.

76.    Through the internet, even non-members are able to purchase the Product by using grocery delivery services such as Instacart.

77.    The Product is sold at thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

78.    Plaintiff, a member of Costco, bought the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at defendant's stores including 2002 N Neil St, Champaign, IL 61820 and/or 1201 Cross Pointe Blvd, Evansville, IN 47715, between August 2020 and March 2021, among other times.

79.    Plaintiff bought the Product because he expected it would not contain artificial flavoring and would contain more of the named fruit ingredient than it did.

80.     Plaintiff bought the Product at or exceeding the above-referenced price.

81.     Plaintiff relied on the representations identified here.

82.     Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

83.     Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

84.     The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

85.     Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

<u>Class Allegations</u>

86.     Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[5]

87.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

88.     Plaintiff's claims and basis for relief are typical to other members because all were

---

[5] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

subjected to the same unfair and deceptive representations and actions.

89.    Plaintiff is an adequate representative because his interests do not conflict with other members.

90.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

91.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

92.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

93.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

94.    Plaintiff incorporates by reference all preceding paragraphs.

95.    Plaintiff and class members desired to purchase a product that did not contain artificial flavoring and would contain more of the named fruit ingredient than it did.

96.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

97.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

98.    Plaintiff relied on the representations.

99.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

100.  The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

101.  Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

102.  As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

103.  In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

104.  The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it did not contain artificial flavoring and would contain more of the named fruit ingredient than it did.

105.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

106.  This duty is based on Defendant's outsized role in the market for this type of Product.

107.  Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

108.  Defendant received notice and should have been aware of these issues due to

complaints by regulators, competitors, and consumers, to its main offices.

109.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

110.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

111.  Defendant had a duty to truthfully represent the Product, which it breached.

112.  This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodian of the Kirkland Signature brand of Costco products.

113.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

114.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

115.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

116.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it did not have artificial flavoring and would contain more of the named fruit ingredient than it did

14

117.   Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

118.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   September 3, 2021

                                        Respectfully submitted,

                                        Sheehan & Associates, P.C.
                                         /s/Spencer Sheehan

60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com