IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TIMOTHY AKERS, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| v. | Case No. 3:21-CV-01098-NJR |
| **COSTCO WHOLESALE CORPORATION,** | |
| **Defendant.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss filed by Defendant Costco Wholesale Corporation ("Costco") (Doc. 8). Plaintiff Timothy Akers filed a timely response (Doc. 13). Costco also filed supplemental authority (Docs. 14-1; 18-1). For the following reasons, the Court grants the motion to dismiss.

### BACKGROUND

As consumers attempt to cut back on sugary beverages, sparkling water has flooded grocery shelves with sales increasing substantially over the last five years (Doc. 1, ¶¶ 2, 3). Costco, under its Kirkland Signature brand, manufactures, packages, labels, markets, and sells sparkling flavored water at thousands of retail locations and online (*Id.* at ¶ 1). Akers, a member of Costco, purchased the Kirkland Signature sparkling flavored water product (*Id.* at ¶ 78). Akers alleges that Costco's labeling on the Kirkland Signature Sparkling Black Raspberry Flavor product specifically misleads consumers as to the amount, quantity, and type of flavoring ingredients (*Id.* at ¶ 10). The front label of the product is featured below:



Akers alleges that the language "Black Raspberry Flavor" paired with a picture of two black raspberries and the product's red hue creates a consumer expectation that the drink's flavor is derived from black raspberries, especially with the absence of a statement like "artificially flavored" on the label (*Id.* at ¶ 13). In light of the product's accompanying ingredient list, Akers claims the front label fails to disclose an included artificial flavor—malic acid (*Id.* at ¶¶ 17-38). The ingredient list reads as follows:

> Carbonated Water, Contains < 2% of Green Tea, Vitamin D3, Niacin, Calcium Panthothentate, Pyridoxine Hydrochloride, Biotin, Vitamin B12, Natural Flavors, Malic Acid, Sucralose, Red 40, Blue 1, Potassium Benzoate (Preservative).

(*Id.* at ¶ 16). Akers states that malic acid, whether technically used as a flavoring component, flavor enhancer, or pH balancer, strengthens and simulates the tart, fruity black raspberry taste (*Id.* at ¶¶ 21, 27, 33-35). As such, consumers are misled to believe the sparkling water's taste comes exclusively, or at least predominantly, from black raspberries and other natural

sources (*Id.* at ¶ 37). The product, according to Akers, lacks an appreciable amount of black raspberry ingredients and does not include black raspberry extract or juice (*Id.* at ¶¶ 39, 40). Consumers value the nutritional value of black raspberries, which contain antioxidants (*Id.* at ¶ 46). Also confusing to Akers, the label's claim of "Zero Calories" seems inconsistent with the product's red hue, which should result from the use of black raspberries (*Id.* at ¶¶ 49-50).

Reasonable consumers, according to Akers, rely on companies to honestly label and identify the components, attributes, and features of ingestible products (*Id.* at ¶ 59). Because the black raspberry flavor sparkling water product does not contain the reasonably expected natural ingredients, Akers paid more than the product's value (*Id.* at ¶ 60). Exploiting these consumer expectations, Costco sold more of the water, at a higher price, than it could have without the misleading label (*Id.* at ¶¶ 61, 62).

Akers filed this putative class action suit on behalf of two proposed classes: an Illinois Class and a Consumer Fraud Multi-State Class (*Id.* at ¶ 86). As to the Illinois Class, Akers alleges false and deceptive material representations and omissions in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (*Id.* at ¶¶ 94-99). On behalf of the Multi-State Class, Akers claims Costco used unfair or deceptive business practices in violation of other state's substantially similar consumer fraud acts (*Id.* at ¶¶ 100-103). Akers further alleges a breach of express warranty, implied warranty of merchantability, and the Magnuson Moss Warranty Act as the product's labeling implied an absence of artificial flavoring and presence of a higher quantity of black raspberry (*Id.* at ¶¶ 104-110). Moreover, Akers asserts claims for negligent misrepresentation, fraud, and unjust enrichment and seeks monetary and injunctive relief, expenses, and reasonable attorneys' fees (*Id.* at ¶¶ 111-118; p. 15, ¶¶ 2-5).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In deciding a motion to dismiss under Rule 12(b)(6), a court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).

## DISCUSSION

**I.   Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")**

Generally, the ICFA protects consumers against unfair or deceptive acts or practices, including but not limited to the use of deception, fraud, false pretense, false promise, misrepresentation, or concealment, or the omission of any material fact. 815 ILCS 505/2. To state a claim under the ICFA, a plaintiff must plead facts demonstrating that: (1) the defendant committed a deceptive or unfair act; (2) the defendant intended that others rely on the deception; (3) the act occurred in the course of trade or commerce; and (4) the act caused actual damages. *Benson v. Fannie May Confections Brands, Inc.,* 944 F.3d 639, 646 (7th Cir. 2019) (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)). Frequently, ICFA claims involve disputed questions of fact not suitable for dismissal at the pleading stage,

however, a court may dismiss the complaint if the challenged statement is not misleading as a matter of law. *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill. 2022).

As this claim relates to deceptive conduct (as opposed to unfair conduct), the heightened pleading standard in Federal Rule of Civil Procedure 9(b) applies. *Benson*, 944 F.3d at 646. Rule 9(b) requires a plaintiff to state "with particularity" any "circumstances constituting fraud." FED. R. CIV. P. 9(b). Essentially, the "who, what, when, where, and how" of the fraud must be sufficiently alleged. *Benson*, 944 F.3d at 646.

A practice is deceptive when "it creates a likelihood of deception or has the capacity to deceive." *Id*. Courts apply the "reasonable consumer" standard to analyze the likelihood of deception. *Id.* (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). This standard requires a "practical and fact-intensive approach to consumer behavior" and must be evaluated in light of the totality of the information made available to the consumer. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477-78 (7th Cir. 2020); *see also Stemm v. Tootsie Roll Industries, Inc.*, 374 F. Supp. 3d 734, 739 (N.D. Ill. 2019). The most important consideration is how real consumers understand and react to the advertising. *Bell,* 982 F.3d at 476. Certainly, "many reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts." *Id.*

Akers's claims may survive a motion to dismiss if he plausibly alleges that the black raspberry flavor sparkling water's front label will likely lead a significant portion of the general consuming public or targeted consumers, acting reasonably, to falsely believe something that its back label dispels. *Id.* at 476. But if Akers bases his deceptive labeling claim on an unreasonable or fanciful interpretation of the label, dismissal on the pleadings may well be justified. *Id.* at 477.

To begin, Costco argues that that no reasonable consumer would interpret the phrase "black raspberry flavor," as displayed on its sparkling water's label, to make any specific ingredient claim. Moreover, Costco contends that the product does contain black raspberry fruit, as Akers seems to concede (Doc. 1, ¶¶ 41, 48), and that any interpretation that the drink contains a specific amount of black raspberry fruit is unreasonable. The reference to black raspberry *flavor* and carbonated *flavored* water on the label, according to Costco, forecloses any doubt as to whether the label makes a flavor claim or an ingredient claim. Costco also argues that the coloring agents do not convey the absence, presence, or quantity of any specific ingredients as coloring is routinely added to food products for aesthetic reasons.

Akers characterizes Costco's argument as employing the "common sense" approach which has been limited by the Seventh Circuit only to instances where the plaintiff's interpretation is facially implausible. Further, Akers explains that his interpretation—that the sparkling water would not contain artificial flavoring and would contain more of the black raspberry ingredient than it did—does not qualify as the unreasonable or fanciful kind that warrants dismissal on the pleadings. Moreover, Akers argues that Costco's sparkling water label and red hue imply that its black raspberry flavoring comes exclusively or predominately from black raspberry ingredients.

The Court disagrees with Akers. As the Seventh Circuit explained in *Bell*, deceptive advertising claims based on unreasonable or fanciful interpretations of labels may justify dismissal on the pleadings. *Bell*, 982 F.3d at 477. To elucidate this concept, the *Bell* court listed

several examples of cases of such fanciful, implausible interpretations.[1] *Id.* at 477-78. A common theme in those cases is a consumer interpretation that conflates a label's words or images about components or flavors in the product with a promise of fresh or natural ingredients, nutritious value, or that the product is primarily composed of certain ingredients. District courts in this circuit focus on this theme as well. *See, e.g., Zahora v. Orgain LLC,* No. 21 C 705, 2021 WL 5140504, at *3-5 (N.D. Ill. Nov. 4, 2021)[2] (holding unreasonable an interpretation of the words "Vanilla Bean Flavor" to indicate the flavor was derived exclusively or even mostly from vanilla beans or natural ingredients; also citing a dozen similar holdings regarding vanilla flavored products); *Chiappetta v. Kellogg Sales Company*, No. 21-CV-3545, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022) (dismissing an implausible claim that the word "strawberry" on a Pop-Tart box combined with a picture of half a strawberry and red food coloring promises that only, or mostly, real strawberries comprised the filling).

Akers attempts to similarly conflate the words "black raspberry flavor," along with a picture of two black raspberries on the label and reddish coloring, with a promise of higher

---

[1] The string cite in *Bell* proceeds as follows: *See, e.g., Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) ("It is implausible that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that Drumstick is more wholesome or nutritious than competing products."); *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Made with Real Vegetables" label on box of crackers could not reasonably mean crackers were "composed of primarily fresh vegetables"); *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (colorful "crunch berries" on Cap'n Crunch box did not reasonably promise fresh fruit); *McKinnis v. Kellogg USA*, No. CV 07-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (same for Froot Loops).

[2] Akers attempts to distinguish this case and other "vanilla" cases by stating that he and other consumers value black raspberries for their nutritive purposes, whereas vanilla extract is not healthier or materially different in any other way from artificial vanilla. The Court rejects this argument in line with the logic explained herein, that the sparkling water product makes no claim that the product contains black raspberry, antioxidants, or any nutritional value whatsoever. Moreover, Akers claims that many vanilla cases contained the unadorned word "vanilla" without an image. In doing so, Akers ignores the cases with products containing images of vanilla flowers or beans that led to dismissal. *See, e.g., Budhani v. Monster Energy Company*, 527 F. Supp. 3d 667, 679 (S.D.N.Y. 2021) (concluding that, while the label may convey some non-negligible amount of vanilla bean extract, a reasonable consumer could not draw the conclusion from the product that the vanilla bean or extract was the predominant or exclusive source of the vanilla flavor); *Jones v. Orgain, LLC,* No. 20 CV 8436, 2021 WL 4392783, at *3 (S.D.N.Y. Sept. 24, 2021) (dismissing claim where the label explicitly stated "vanilla bean flavor" and pictured a vanilla flower).

content of actual black raspberry juice or extract and no artificial ingredients. Such an interpretation is fanciful and unreasonable. The label makes no claim that the product is flavored *with* black raspberries, let alone only black raspberries. Further, the label reiterates twice that the product is "black raspberry *flavor*" and "carbonated *flavored* water." Here, black raspberry is clearly a flavor claim, not an ingredient claim. The front of the bottle is also devoid of any reference to natural fruit flavoring, real fruit, real black raspberries, fruit juice, or any phrase of a similar nature. The label offers additional context clues for the consumer as it suggests the beverage contains zero calories. If the product contained actual black raspberry, this would likely not be true as shown by Akers's own product comparison. In the Complaint, Akers juxtaposes the Kirkland Signature product to its competitor Spindrift, which labels its product as containing sparkling water and real squeezed fruit, reiterating "yup, that's it" on the can (Doc. 1, ¶ 5). That product contains ten calories.[3] This dispels the notion that a reasonable consumer would expect that Costco's water does or should contain a substantial amount of black raspberry extract or juice.

Because sparkling water beverages, especially fruit flavored varieties, are an alternative to sugary soft drinks, Akers suggests that consumers expect Costco's product to carry nutritious value and contain a significant amount of black raspberry. Again, the label does not advertise that the product is made with or from real fruit only that it is "black raspberry flavor." The label does not even mention that the sparkling water *contains* black raspberry. Accordingly, Akers's interpretation of the label is unreasonable on this ground.

Next, Akers contends that, without a qualifier such as "artificially flavored," the front

---

[3] *See* https://www.target.com/p/spindrift-blackberry-sparkling-water-8pk-12-fl-oz-cans/-/A-51129789 (last visited Sept. 28, 2022).

label misleads consumers because the ingredient list includes malic acid which necessarily adds to the flavoring. Akers alleges that malic acid enhances and simulates the tarty, fruity taste of black raspberry. Further, according to Akers, the lack of the phrase "artificially flavored" on the front label constitutes an omission of material fact that would otherwise be required under the Federal Food, Drug, and Cosmetic Act ("FDCA"). On the other hand, Costco stresses that malic acid is used as a pH level balancer—not a flavor contributor—and that the label creates no reasonable expectation regarding the presence or absence of artificial ingredients or flavoring.

As an initial matter, even if the FDCA would require a front label to include language regarding artificial flavors when a product contains malic acid, violation of a FDCA regulation is not a *per se* violation of the ICFA. *Stemm*, 374 F. Supp. 3d at 742. To support his malic acid argument, Akers turns to ample persuasive case law that instructs "the question of whether malic acid functions as a flavor or a flavor enhancer in a particular food product is a factual dispute inappropriate for resolution on a motion to dismiss." *Hayes v. General Mills, Inc.*, No. 19-cv-05626, 2021 WL 3207749, at *3 (N.D. Ill. July 29, 2021); *see also Branca v. Bai Brands, LLC,* No. 3:18-cv-00757, 2019 WL 1082562, at *8 (S.D. Cal. Mar. 7, 2019) (whether "the malic acid in their Products functions exclusively as a pH control agent and not as a flavor" is "inappropriate for determination on a motion to dismiss"). Many of these cases, however, feature labels that declare, "no artificial flavors" or "naturally flavored." Such is not the case here.

Akers does cite *Willard v. Tropicana Manufacturing Company, Inc.* where the product label, similar to Costco's, made no claim of natural or artificial flavoring but the ingredients list revealed malic acid. 577 F. Supp. 3d 814, 828 (N.D. Ill. 2021). In *Willard*, one of the labels

contained a fruit name, pictures, and a prominent statement that the juice product contained "50% less sugar & calories than apple juice." *Id.* at 833. The court determined, as Akers points out, that the plaintiffs adequately alleged the malic acid acted as a flavor and not just a flavor enhancer. *Id.* at 828. The court reasoned, however, that the front label taken as a whole, despite omitting "artificial ingredient" language, unambiguously notified the consumer that the product was not apple juice, and the ingredient list, including malic acid, only confirmed a reasonable consumer's expectation that the product contained artificial ingredients. *Id.* at 833. As such, the court in *Willard* dismissed the claims for this product because the label made it impossible for the plaintiffs to prove that a reasonable consumer was likely to be deceived. *Id.*

Likewise, here, even if the Court determines that Akers adequately alleged that malic acid acts as a flavor, not simply a flavoring agent or pH balancer, and takes such assertions as true, the sparkling water's front label as a whole does not mislead consumers into believing the product only contains natural ingredients or lacks artificial ingredients. The label reiterates the flavored nature of the water and states that the beverage contains zero calories. Flipping to the ingredient list does not reveal shocking information but rather simply confirms an expectation that the water could contain both natural and artificial ingredients. Therefore, it is implausible that the packaging would mislead a reasonable consumer, and Akers's interpretation is "fanciful."

Accordingly, the Court dismisses Akers's claims under the ICFA.

## II. Violation of Other State Consumer Fraud Acts (Putative Multi-State Class)

Akers's Complaint states that the multi-state class is limited to consumers in Iowa and Arkansas who purchased Costco's Kirkland Signature black raspberry flavor sparkling water

(Doc. 1, ¶ 86). This limitation is in place because those states have similar consumer fraud laws to Illinois (*Id.* at ¶ 86, n. 5). As the Court discussed above, Akers failed to plausibly state a claim for relief under the ICFA, and as such, would similarly fail to do so under the parallel laws of Iowa and Arkansas. Any claims relative to the multi-state class are dismissed.

### III. Breach of Warranty

#### a. *Breach of Express Warranty and Implied Warranty of Merchantability*

Akers alleges that Costco's sparkling water was "manufactured, labeled, and sold by [Costco] and expressly and impliedly warranted to [Akers] and class members that it did not contain artificial flavoring and would contain more of the named fruit ingredient than it did" (Doc. 1, ¶ 104). Akers also states that the product failed to conform to its affirmations of fact and promises (*Id.* at ¶ 109).

Under Illinois law, to substantiate a claim for breach of express warranty, a plaintiff must allege that the defendant: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). To state a claim for implied warranty of merchantability, a plaintiff must allege that: (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect. *Rudy*, 583 F. Supp. 3d at 1162. Furthermore, for goods to be merchantable, under the relevant Illinois law, they must pass without objection in the trade under the contract description and must be fit for the ordinary purposes for which such goods are used. *O'Connor*, 477 F. Supp. 3d at 714; 810 ILCS 5/2-314(2).

Fatal to his warranty claims, Akers relies on an implausible or fanciful interpretation

of Costco's sparkling water label as explained above.

Even if Akers's claims were rooted in a reasonable interpretation, Costco contends that the express warranty claim is waived because Akers based his claim entirely on implied, not express, claims. The phrase "black raspberry flavor" combined with red coloring and a picture of black raspberries is indeed not an express warranty of any kind.

Additionally, as to implied warranty, Costco states that Akers cannot demonstrate, or plead, that the sparkling water is not of merchantable quality, as the beverage is fit for human consumption. Costco asserts that Akers also failed to provide adequate pre-suit notice as required for implied (and express) warranty claims.

Akers alternatively argues that the beverage was not fit for the ordinary purposes for which such goods are used because it did not contain more black raspberry fruit ingredient and impliedly Costco warranted the product did not contain artificial flavoring. Moreover, Akers claims that filing this suit provided adequate notice, and even if the Complaint did not provide notice, Costco had actual knowledge of the defect which eliminates the requirement for notice.

The Court rejects Akers's argument that the water was not merchantable at the time of sale because it contained less black raspberry fruit ingredient than implied. The product was clearly fit for consumption, which represents its ordinary use. As to the notice requirement, the Illinois Supreme Court announced in *Connick* v. *Suzuki Motor Co., Ltd.*, that under Illinois law "[o]nly a consumer plaintiff who suffers a personal injury may satisfy the [notice requirement] by filing a complaint stating a breach of warranty action against the seller." 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 590 (Ill. 1996). Akers alleges purely economic loss, therefore, filing a complaint does not satisfy the notice requirement.

Moreover, a manufacturer's knowledge of its own ingredients does not constitute actual knowledge of a defect. *See Elder v. Bimbo Bakeries USA, Inc.*, No. 21-cv-637, 2022 WL 816631, at *4 (S.D. Ill. Mar. 17, 2022).

The Court concludes that Akers's claims for breach of express and implied warranties fail in several respects. Akers makes no argument regarding privity, thus, that issue need not be analyzed. The claims for breach of express and implied warranties are dismissed.

### b. *Magnuson Moss Warranty Act ("MMWA")*

Akers's breach of warranty claim under the MMWA also fails. To sustain a MMWA claim, there must exist a viable underlying state-law warranty claim. *Schiesser v. Ford Motor Co.*, No. 16-cv-00730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016). As discussed above, Akers's state-law warranty claim fails, so too does the MMWA claim.

Under the MMWA, a written warranty is a fact or promise that "affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). So even if the state-law warranty claims were viable, the phrases included on Costco's sparkling water label like "black raspberry flavor" and "carbonated flavored water" are descriptions, not guarantees of specified performance or lack of defects. *See Rudy*, 583 F. Supp. 3d at 1163-64 (the phrase "Smoked Almonds" constituted a product description not a warranty to consumers that such product was defect-free or would perform at a specified level over a specific time). This claim must be dismissed.

### IV. Negligent Misrepresentation

In his Complaint, Akers alleges that Costco's sparkling water label negligently misrepresented its product, which took advantage of consumers' cognitive shortcuts while

shopping and their general trust in Costco (Doc. 1, ¶¶ 111-115). A negligent misrepresentation claim comprises: (1) a false statement of a material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance when the party making the statement is under a duty to communicate accurate information. *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 274 Ill.Dec. 461, 791 N.E.2d 553, 562 (Ill. App. Ct. 2003). Generally, Illinois law does not permit a negligence action for recovery of economic loss alone, with two exceptions for intentionally false representation and negligent misrepresentation while in the business of supplying information to guide others in business transactions. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443, 452 (Ill. 1982).

Costco argues that a negligence cause of action cannot be sustained as Akers alleges solely economic loss. Moreover, Costco claims that both recognized exceptions to this rule do not apply as Costco provides tangible goods, and Akers failed to plead intentional misrepresentation. The Court agrees. The negligent misrepresentation claims are dismissed.

**V.    Fraud**

To state a claim for common-law fraud, a plaintiff must plead: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Rudy*, 583 F. Supp. 3d at 1165 (quoting *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007)).

Costco asserts that Akers's fraud claim fails because the label did not contain a false statement of material fact and his reliance on the wording of the label was not reasonable. The Court agrees. Akers's fraud claim fails on the first element as he has not plausibly alleged that the sparkling water label contained a false statement. As discussed above, the claim also fails as his interpretation of the label is implausible and fanciful. Even if Akers demonstrated a reasonable interpretation, the conclusory allegation in the Complaint, that Costco's "fraudulent intent is evinced by knowledge that the Product was not consistent with its representations," fails to adequately allege the required scienter (Doc. 1, ¶ 117). As such, the fraud claim must be dismissed.

## VI. Unjust Enrichment

Illinois law recognizes unjust enrichment as an independent cause of action. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). If such a claim rests on the same improper conduct alleged in another claim, the unjust enrichment claim, tied to the related claim, will stand or fall with it. *Id.* at 517. Here, Akers's unjust enrichment claim rests on his ICFA claim, which the Court dismissed above. Accordingly, the Court also dismisses Akers's unjust enrichment claim as it necessarily falls with the related claim.

## VII. Injunctive Relief

Finally, Akers seeks injunctive relief so that Costco removes, corrects, or refrains from repeating the challenged practices and representations in the future (Doc. 1, p. 15 ¶¶ 2-3). Costco argues that Akers lacks standing to seek injunctive relief because he is now aware of the alleged misrepresentations and does not risk falling for the deception again.

To state a claim for injunctive relief, a plaintiff must allege that a defendant's conduct is likely to cause her harm in the future. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732,

737 (7th Cir. 2014). Such threat of harm must be real and immediate. *Jett v. Warrantech Corp.*, 436 F. Supp. 3d 1170, 1177 (S.D. Ill. 2020). As discussed above, the Court does not find Costco's labeling practices plausibly deceptive to a reasonable consumer, so Akers has failed to demonstrate harm. Even if the label is deceptive, despite Akers's allegation that "he intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition" (Doc. 1, ¶ 85), he is aware of the sparkling water's label and relative ingredients and would not likely be harmed by such representation in the future. Accordingly, injunctive relief is unavailable to Akers.

## CONCLUSION

For these reasons, the Motion to Dismiss filed by Defendant Costco Wholesale Corporation (Doc. 8) is **GRANTED.** The Court dismisses Akers's claims against Costco Wholesale Corporation without prejudice. Akers is granted leave to amend his complaint on or before **October 20, 2022.**

**IT IS SO ORDERED.**

DATED: September 29, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**